KING, C.J.,
for the Court.
¶ 1. Johnny Berry was convicted by the Lowndes County Circuit Court of uttering forgery. Convicted as an habitual offender, Berry was sentenced to life imprisonment. Aggrieved by his conviction and sentence, Berry appeals and raises the following issues: (1) whether the trial court improperly allowed an amendment of the indictment to charge habitual status; (2) whether his sentence of life was disproportional to the crime of uttering forgery; and (3) whether the jury’s verdict was contrary to the weight of the evidence.
¶ 2. Finding no error, this Court affirms.
FACTS
¶ 3. Johnny Berry and his wife were employed by a cleaning service in Columbus known as “Two Women and a Mop.” Mona Sanders contracted with “Two Women and a Mop” for housecleaning services. On July 11, 2002, the Berrys went to the Sanders’ home to clean. Sanders, in a hurry to attend a social engagement, left a check to pay the Berrys. Sanders signed the check and wrote in “$65.00”. She did not write out the sum to be paid. Upon completion of their work, the Berrys left the house with the check. Later that day Sanders’ cheek, which was then made out for $650.00 to Berry, was presented at the bank for payment. The bank obtained a driver’s license identification and then cashed the check. Upon finding that her $65 check had been cashed for $650, Sanders contacted the Columbus Police Department. Following an investigation, the Columbus Police Department charged the Berrys with uttering forgery.
¶ 4. Berry was indicted on a charge of uttering forgery on November 7, 2002. On November 21, 2002, the trial court entered a scheduling order, which required that all pretrial motion be filed by January 17, 2003. On May 13,2003, the state filed a *1013 motion to amend the indictment to charge Johnny Berry as an habitual offender due to several prior felony convictions. Johnny Berry went to trial on May 14, 2003. A jury found Berry guilty of the charge of uttering forgery on May 14, 2003. The trial judge entered the verdict of guilty, but delayed sentencing.
¶ 5. On May 30, 2003, the trial court heard argument on the State’s motion to amend the indictment to charge habitual status. The trial court allowed the amendment, and then proceeded to sentence Berry to life as an habitual offender.
DISCUSSION
I.
DID THE TRIAL COURT IMPROPERLY ALLOW AMENDMENT OF THE INDICTMENT TO CHARGE HABITUAL STATUS?
¶ 6. Berry argues that his sentence as an habitual offender was improper because(l) the State’s motion to amend was filed beyond the date required by the scheduling order, and (2) the motion to amend was not argued or ruled on until after his conviction.
¶ 7. The question of whether to allow the filing of motions beyond the date of a scheduling order is a matter left to the sound discretion of the trial judge. Bowie v. Montfort Jones Memorial Hosp., 861 So.2d 1037(¶ 14) (Miss.2003). In the absence of an abuse of that discretion, this Court will not find error in that action. In considering the issue of possible abuse of discretion, this Court looks to determine whether the defendant was unnecessarily disadvantaged by the trial court’s actions. U.S. v. Mitchell, 777 F.2d 248, 255 (5th Cir.1985), Walker v. State, 729 So.2d 197 (¶¶ 9, 10) (Miss.1998). This Court sees no such disadvantage under the facts of this case.
¶ 8. Under Rule 7.09 of the Uniform Circuit and County Court Rules, an indictment may be amended for the purpose of enhanced punishment, provided “the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised.” In objecting to the amendment, Berry has never suggested that he was not afforded a fair opportunity to present a defense, or that he was unfairly surprised.
¶ 9. As the trial judge noted, the amendment was only relevant to the sentencing phase and not the substance of the indictment. The amendment did not interfere with any substantive defenses which were available to Berry. The motion to amend was filed on May 13, 2003, and argued on May 30, 2003. It identified with specificity the four prior convictions relied upon by the State to request habitual status. There is no suggestion from Berry of any mistake or error as to these convictions, which would affected his status as an habitual offender.
II.
WAS BERRY’S SENTENCE DISPROPORTIONATE TO THE CRIME?
¶ 10. Berry argues that because he was convicted of changing a $65 check to a $650 check, that his sentence of life is cruel and inhuman in that the punishment far outweighs the offense. The purpose of habitual offender acts is to punish not only for the immediate offense, but to also punish for a pattern of criminal conduct. Jackson v. State, 381 So.2d 1040, 1042 (Miss.1980). It has been held that states may legitimately provide for such enhanced punishment. Baker v. State, 394 So.2d 1376, 1377-78 (Miss.1981).
*1014 ¶ 11. In his brief, Berry acknowledges four prior felony convictions, and that by age forty-five, he had spent more than 25 years incarcerated in various prisons. These admissions show him to be the type of offender to whom habitual acts were intended to apply. The burden of proving any claim of disproportionate sentencing was an affirmative obligation of Berry. White v. State, 742 So.2d 1126(¶ 37) (Miss.1999). He was obligated to first present any such evidence to the trial court. The record does not reflect any such effort by Berry before the trial court. In the absence of such showing, this matter is not properly before this Court. Wright v. State, 856 So.2d 341(¶ 7) (Miss.Ct.App.2003).
III.
WAS THE VERDICT CONTRARY TO THE EVIDENCE?
¶ 12. Berry moved the trial court for a directed verdict, peremptory instruction and JNOV, all of which were denied. He asks this Court to find that the verdict was contrary to the evidence, and the trial court therefore erred in the denial of his motions. Each of those motions challenges the sufficiency of the evidence, and is therefore reviewed when the last challenge was made. Myles v. State, 774 So.2d 486 (¶¶ 15, 16) (Miss.Ct.App.2000), Owens v. State, 763 So.2d 917(¶ 7) (Miss.Ct.App.2000). In this case that would be the motion for JNOV. When this Court reviews the denial of a motion for JNOV, it considers the evidence in the light most favorable to the verdict, and accords to it all reasonable inferences which may be drawn from the evidence. Sturdivant v. State, 745 So.2d 240(¶ 22) (Miss.1999). This Court may only reverse, where it finds that no reasonable jury could have found the defendant guilty. Id.
¶ 13. Sanders testified that Berry and his wife came to clean her house. She was in a hurry and left a left a check for $65 to pay for the cleaning service. This cheek did not have a payee listed, nor was the amount of the check entered in script. Brandy Coward, the bank teller, testified that a check, signed by Sanders and payable to Johnny Berry in the amount of $650, was presented to her for payment. The person presenting the check was identified by his drivers license as a Johnny Berry. Officer Gregg of the Columbus Police Department testified that under questioning, Berry made a verbal confession to the charge of uttering forgery.
¶ 14. The jury, as the trier of fact, was responsible for determining the credibility of each witness, and the weight to be accorded to the testimony of each. Sheffield v. State, 749 So.2d 123(¶ 9) (Miss.1999). If it found the State’s evidence credible, as it apparently did, there existed substantial evidence to support the verdict. Where the verdict is supported by substantial evidence, and properly applies the law, it must be affirmed. Morris v. State, 777 So.2d 16(¶ 23) (Miss.2000).
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF LOWNDES COUNTY OF CONVICTION OF UTTERING FORGERY, AS AN HABITUAL OFFENDER, AND SENTENCE OF LIFE IMPRISONMENT WITHOUT PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LOWNDES COUNTY.
BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, GRIFFIS AND ISHEE, JJ., CONCUR. BARNES, J., NOT PARTICIPATING.