529 So.2d 537 (1988)
Grady BROWN
v.
STATE of Mississippi.
No. 57598.
Supreme Court of Mississippi.
April 13, 1988.
Rehearing Denied August 24, 1988.
Travis Buckley, Ellisville, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by Leyser Q. Morris, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and PRATHER and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:
On November 14, 1985, a criminal conviction was returned in the Circuit Court of Smith County, Mississippi, the Honorable L.D. Pittman, presiding, wherein Grady Brown was tried and found guilty of rape. Brown was sentenced to a term of thirty (30) years with ten (10) years suspended in the custody of the Mississippi Department of Corrections. Brown appealed to this Court for relief assigning as error the following:
I. That the trial court erred in refusing to grant a new trial on the grounds that two perspective jurors did not truthfully respond to questions propounded to them on voir dire examination by the court and the parties; and
II. That the trial court erred in granting instruction S-2 over objection of the defendant.
Cynthia Crosby identified Grady Brown as the man who allegedly raped her on February 10, 1985. The first witness called by the State was Stanley Lott, Crosby's ex-husband. Lott testified that he called Crosby at her mother's home on February 10, 1985, and asked her to meet him that night to discuss past due child support which Lott had failed to pay. The two met, at Lott's request, near a garbage dump on an isolated gravel road off of Summerland Road in Smith County. After their discussion, Lott returned to his car and was about to back out when a van *538 pulled in behind him. He testified that he got out of the car to see who it was and that Brown got out of the van with a gun. Lott said that when Brown asked him what they were doing, he told him that they were about to leave, and Brown said, "You had your chance," and raised his gun. Lott testified that he begged him not to shoot.
According to Lott, Brown then went to see who was in the other car and when he turned away Lott ran across the road into the woods and watched. He saw Crosby and Brown walking down the road yelling at him to come back and that Brown would let them leave. After that, Lott could hear nothing. He waited, watching, for 45 minutes to an hour until he saw the van and Crosby's vehicle leave. According to Lott, he then left and drove to Crosby's house and honked the horn; she came out and told him Brown had raped her.
Cynthia Crosby testified that she was in her car when the van pulled up and saw Brown get out of the van but saw nothing in his hands. She heard voices at first and when everything got quiet she got out of the car and asked Brown where Stanley was and Brown said, "Young lady, you've got to start doing some talking now because Stanley, he has run." She said that Brown made her call for Lott. According to Crosby, Brown then told her, "I'll tell you what, I have never went with a black girl, but this is one night I'm going to go with one before you go home." When Crosby refused, Brown pointed his gun at her shoulder. She testified that they then went to Crosby's car where he laid the gun on top of the car, got inside, and raped her after which he got out and told her she could go home. Crosby said that she did not resist in any way because she was afraid.
Grady Brown did not testify, but his statement was introduced through the testimony of Smith County Sheriff Keith Bounds. According to his statement, Brown's version of the facts is basically the same as that of Crosby and Lott except that he claims that he propositioned Crosby and that she consented to having sex with him.
Bounds testified that there was not a rape kit for this case because Crosby waited until the day after the rape to file charges.
The jury found Brown guilty of rape but was unable to fix a penalty. The trial judge sentenced Brown to thirty (30) years with ten (10) years suspended in the custody of the Mississippi Department of Corrections.

THAT THE TRIAL COURT ERRED IN REFUSING TO GRANT A NEW TRIAL ON THE GROUNDS THAT TWO PERSPECTIVE JURORS DID NOT TRUTHFULLY RESPOND TO QUESTIONS PROPOUNDED TO THEM ON VOIR DIRE EXAMINATION BY THE COURT AND THE PARTIES.
Brown argues that it was error to deny his "motion for new trial." At the hearing on the motion, the parties stipulated that Juror Kathy Maas had a case pending in the court which convicted Brown; in fact, her case was set for trial on the Monday following Brown's trial. Brown argues that had the court known of Maas' pending lawsuit, she would have been removed citing Mississippi Code Annotated, Section 13-5-1 (1972), which provides in pertinent part:
No juror shall serve who has a case of his own pending in that court, provided there are sufficient qualified jurors in the district, and for trial at that time.
The parties further stipulated that another juror, J.T. Johnson, failed to respond when asked whether he or any member of his family had been on the other side of a lawsuit in which defense counsel was involved when in fact defense counsel had filed suit against his son-in-law.[1] We find it curious that neither party found it important to note that proceeding was a divorce action, and that defense counsel filed suit on behalf of Johnson's daughter, which is quite relevant. It is entirely possible and in fact probable that since his daughter was represented by defense counsel, Johnson did not believe that a member of his *539 family "had ever been on the opposite side of a case" from the defense counsel.
Both parties agree that this Court's opinion in Odom v. State, provides the rule on this issue:
Therefore, we hold that where, as here, a prospective juror in a criminal case fails to respond to a relevant, direct, and unambiguous question presented by defense counsel on voir dire, although having knowledge of the information sought to be elicited, the trial court should, upon motion for a new trial, determine whether the question propounded to the juror was (1) relevant to the voir dire examination; (2) whether it was unambiguous; and (3) whether the juror had substantial knowledge of the information sought to be elicited. If the trial court's determination of these inquiries is in the affirmative, the court should then determine if prejudice to the defendant in selecting the jury reasonably could be inferred from the juror's failure to respond. If prejudice reasonably could be inferred, then a new trial should be ordered.
Odom v. State, 355 So.2d 1381, 1383 (Miss. 1978).
The test set forth in Odom has been followed on numerous occasions by this Court. See Stevens v. State, 513 So.2d 603, 605 (Miss. 1987); Tolbert v. State, 511 So.2d 1368, 1377-78 (Miss. 1987); Mhoon v. State, 464 So.2d 77, 81 (Miss. 1985); and Logan v. State, 465 So.2d 339, 340 (Miss. 1985).
The abundance of case law on this issue, however, is of limited assistance because as this Court has stated in regard to the Odom test:
... No firm, unbending rule can be laid down that would control every situation that might arise on the voir dire of perspective jurors. Therefore, each case must be decided on an ad hoc basis considering the facts then before the court.
Logan v. State, 465 So.2d 339, 340 (Miss. 1985), and Tolbert v. State, 511 So.2d 1368, 1377 (Miss. 1987), citing Odom v. State, 355 So.2d 1381, 1383 (Miss. 1978).
Upon analyzing whether Johnson's failure to respond on voir dire justifies granting Brown a new trial under the Odom test it is clear that whether Johnson or a member of his family had ever been on the other side of a lawsuit in which defense counsel was involved is relevant. However, it appears that the question was ambiguous as applied to Johnson. Because it was Johnson's daughter who filed suit against his son-in-law it is probable that Johnson simply did not consider defense counsel to be on the "opposite" side of the lawsuit but rather on the side of his daughter, even though the opposing party was a member of his family by marriage. Moreover, as a result of the divorce action, Johnson's former son-in-law is no longer a member of his family. Regarding part three of the test, it is not clear whether Johnson had "substantial knowledge of the information sought to be solicited" although it is possible that Johnson had no knowledge of who represented his daughter in the divorce action.
When considering those elements as applied to these facts, prejudice to Brown cannot reasonably be inferred. Although the record does not reveal whether the trial judge employed the Odom test, the court in Odom held that "a court's judgment will not be disturbed unless it appears clearly that it is wrong." Odom v. State, 355 So.2d 1381, 1383 (Miss. 1978) [Emphasis added]. Had Johnson responded, further voir dire would have revealed that when defense counsel here filed suit against his son-in-law, he was representing Johnson's daughter in a divorce proceeding and Johnson would not have been subject to a challenge for cause. On these facts, we cannot say that the trial court's denial of a new trial based on Johnson's failure to respond constituted manifest error.
Whether Kathy Maas' failure to respond when asked if she had a case pending in that court justifies a new trial is a more complex issue. The presence of Maas on the jury was in direct contravention of Mississippi Code Annotated, Section 13-5-1 (1972). Although the statute is clear, this Court has not interpreted whether violation of that portion of the statute warrants a new trial.
The statute provides:
Every citizen not under the age of twenty-one years, who is either a qualified *540 elector, or a resident freeholder of the county for more than one year, is able to read and write, and has not been convicted of an infamous crime, or the unlawful sale of intoxicating liquors within a period of five years and who is not a common gambler or habitual drunkard, is a competent juror. No person who is or has been within twelve months the overseer of a public road or road contractor shall, however, be competent to serve as a grand juror. The lack of any such qualifications on the part of one or more jurors shall not, however, vitiate an indictment or verdict. Moreover, no talesman or tales juror shall be qualified who has served as such talesman or tales juror in the last preceding two years, and no juror shall serve on any jury who has served as such for the last preceding two years. No juror shall serve who has a case of his own pending in that court, provided there are sufficient qualified jurors in the district, and for trial at that term. (Emphasis Added).
Mississippi Code Annotated, § 13-5-1 (1972).
We note that after the initial definition of who is competent to serve the statute provides that the lack of such qualifications will not vitiate a verdict. The statute then goes on to unequivocally prohibit service of any juror who has a case pending in that court.
When the parties stipulated that a juror had served in violation of the statute and neither the state nor the defense was aware of such, Brown's motion for a new trial should have been granted.
Brown's second assignment of error has no merit.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
NOTES
[1] The record at times refers to this individual as Johnson's son and at others as his son-in-law, yet the record clearly shows that this is in fact his son-in-law.