CHANDLER, J., for the Court.
¶ 1. Jon Jeffrey Abies was found guilty of the murder of Larry McCullough and sentenced to life in the custody of the Mississippi Department of Corrections. Abies filed a motion for a new trial, or in the alternative, a judgment notwithstanding the verdict (JNOV). The trial court denied the motion. In this appeal, Abies challenges the weight and sufficiency of the State’s evidence that he did not kill McCullough in self-defense, and also argues that the trial court erred by denying his motion for a mistrial on the ground of juror misconduct.
FACTS
¶2. On February 18, 2000, Jon Jeffrey Abies shot and killed Larry McCullough outside the home of McCullough’s brother, Gary Haymer. On the date of the shooting, Abies met Robert Warren at about 3:00 p.m. and the two “rode around.” Abies had two pistols with him. That night, the two went to a pool hall called J’s. At J’s, they played pool with Warren’s cousin, Tim Winters. There was some discussion about McCullough’s possible connection with an incident that occurred approximately two weeks prior to the shooting, when an unidentified man attempted to rob Abies outside Haymer’s home. After about two hours, Winters asked Abies and Warren to drive him to Haymer’s house to play cards. Abies and Warren dropped Winters at Haymer’s house. Winters later testified that when he went inside, he told McCullough that Abies had said that he would “bust a cap in” McCullough.
¶ 3. Abies and Warren drove around the neighborhood. Warren later testified that during the ride, Abies said, “I’ll bust him,” referring to McCullough, and that “bust” meant “shoot.” A short time later, the two returned to Haymer’s house. Warren exited the car. McCullough came out of the house and spoke to Warren. Gary Hay-mer also came out. At some point, Abies exited the car and stood near it in the street. McCullough approached Abies and the two began a loud argument about the earlier attempted robbery of Abies. McCullough pushed Abies. Abies produced a gun and shot McCullough four or five times. Haymer wrestled Abies to the ground and the police arrived. McCullough was hospitalized and died several days later of complications from the gunshot wounds.
LAW AND ANALYSIS
I. DID THE TRIAL COURT ERR BY DENYING ABLES’ MOTION FOR A JUDGMENT NOTWITHSTANDING THE VERDICT OR, ALTERNATIVELY, A NEW TRIAL?
¶ 4. Abies’ first and third arguments challenge the weight and sufficiency of the evidence and will be addressed together. The trial court submitted the case to the jury on the theories of murder, manslaughter, and self-defense. The jury found Abies guilty of murder, as defined by Miss.Code Ann. § 97-3-19(1) (Rev. 2000): “[t]he killing of a human being without the authority of law by any means or in any manner shall be murder in the *174 following cases: (a) When done with deliberate design to effect the death of the person killed, or of any human being.” On appeal, Abies argues that the State submitted insufficient evidence that Abies did not act in self-defense, and that the verdict of murder was against the weight of the evidence.
¶ 5. A motion for a JNOV challenges the legal sufficiency of the evidence. McClain v. State, 625 So.2d 774, 778 (Miss.1993). In reviewing the denial of a motion for a JNOV, this Court takes as true all credible evidence consistent with the defendant’s guilt, and gives the prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. Id. We may reverse only where the evidence so considered is such that no reasonable and fair-minded juror could find the defendant guilty. Id.
¶ 6. Mississippi Code Annotated § 97-3-15 provides that the killing of a human being is justifiable “when committed in the lawful defense of one’s own person or any other human being, where there shall be reasonable ground to apprehend a design to commit a felony or to do sure great personal injury, and there shall be imminent danger of such design being accomplished.” Miss.Code Ann. § 97-3-15(l)(f) (Rev.2000). Once the defendant raises self-defense, the State has the burden to prove beyond a reasonable doubt that the defendant did not act in self-defense. Heidel v. State, 587 So.2d 835, 843 (Miss.1991).
¶ 7. Abies argues that a reasonable jury could only have found that he acted in self-defense. Abies argues that McCullough placed him in reasonable fear for his life. It was established at trial that McCullough outweighed Abies by over a hundred pounds. Abies testified that McCullough had a reputation for aggressiveness. Abies testified that McCullough approached Abies and loudly cursed, threatened and insulted him, that McCullough pushed Abies, and that McCullough then made a hand gesture indicating that he was reaching for a weapon. Abies contends that it was then that he shot McCullough.
¶ 8. The State put on evidence tending to show that Abies acted upon a deliberate design to kill McCullough. Taking the State’s evidence as true, we find that Abies’ argument is without merit. Robert Warren testified that, during the car ride, they discussed the earlier attempted robbery and McCullough’s possible involvement, and Abies said that he would “bust” McCullough. Winters said he warned McCullough that Abies wanted to “bust a cap in” him. McCullough’s brother testified that Abies instigated the argument with McCullough, shot McCullough as McCullough ran away and after McCullough fell down, and laughed during the shooting. The evidence was uncontradict-ed that McCullough was in fact unarmed, and no one other than Abies saw McCullough reach for a weapon before Abies shot him. The jury reasonably could have inferred from the evidence that Abies formed a deliberate design to kill McCullough and did not do so in self-defense.
¶ 9. A motion for a new trial challenges the weight of the evidence. Jones v. State, 635 So.2d 884, 887 (Miss.1994). We may reverse only where, taking the State’s evidence as true, the trial court’s failure to grant a new trial was an abuse of discretion and the verdict amounts to an unconscionable injustice. Id. Abies argues that the jury’s finding that he formed a deliberate design to kill McCullough was against the overwhelming weight of the evidence. The argument is without merit. It is the province of the jury to weigh conflicting evidence and to evaluate the credibility of witnesses. Conley v. State, 790 So.2d 773, *175 807 (¶ 138) (Miss.2001). We find from the evidence described above that the verdict of murder was not an unconscionable injustice.
II. DID THE TRIAL COURT ERR BY DENYING ABLES’ MOTION FOR A MISTRIAL DUE TO A JUROR’S FAILURE TO DISCLOSE CERTAIN INFORMATION DURING VOIR DIRE?
¶ 10. Abies’ second argument is that he was entitled to a mistrial on the grounds of juror misconduct because Juror Annette Clayburn failed to disclose certain information during voir dire. At voir dire, the trial court and counsel thoroughly questioned the venire about their knowledge of the casé and the parties. Annette Clayburn remained silent throughout voir dire and was selected as a juror. The court instructed the jurors to refrain from any communication with the parties or the attorneys, and to refrain from discussing the case amongst themselves before deliberations.
¶ 11. Juror Clayburn’s misconduct came to light after the jury heard the testimony of Robert Warren and Gary Haymer. The court questioned Clayburn in chambers and she admitted living on the same street as Haymer. Clayburn stated that prior to the shooting, she knew McCullough through her granddaughter’s activities with McCullough and from McCullough coming over to her house. She knew Haymer as a neighbor. Clay-burn further admitted that during a break in the trial, Haymer’s wife asked her for a cigarette. Clayburn said that on the night of the shooting, Clayburn, her daughter and her daughter’s baby were in the daughter’s car in their driveway. They saw Abies drive up and down the street about three times with his radio on. Some time later, they heard a gunshot. Clay-burn’s daughter exited the car, ran down the street, and saw McCullough lying in the street. The daughter picked up McCullough and held him.
¶ 12. The court asked Clayburn if she had discussed the case with any other jurors. She stated that she did not talk to anyone on the jury panel about the night of the shooting, or tell them that she lived down the street from Gary Haymer. Clayburn also told the court that she never discussed the shooting with her daughter. When the court asked Clayburn why she failed to disclose her relationships with the victim’s family and her knowledge of the case during voir dire, she responded, ‘Well, this my first time ever being on it [the jury panel]. I just really didn’t know what to do,” and said that she was nervous and scared. The court excused Clayburn and substituted an alternate juror. Abies immediately moved for a mistrial, and the court overruled the motion.
¶ 13. A juror who has withheld information or misrepresented material facts at voir dire is disqualified from service. Miss.Code Ann. § 13-5-67 (Rev.2002); Myers v. State, 565 So.2d 554, 558 (Miss.1990). This Court uses the analysis from Odom v. State to determine whether to grant a new trial on the basis of a juror’s failure to disclose information during voir dire. Logan v. State, 465 So.2d 339, 340 (Miss.1985). Odom held that:
[W]here a prospective juror in a criminal case fails to respond to a relevant, direct, and unambiguous question presented by defense counsel on voir dire, although having knowledge of the information sought to be elicited, the trial court should, upon motion for a new trial, determine whether the question propounded to the juror was (1) relevant to the voir dire examination; (2) whether it was unambiguous; and (3) whether the juror had substantial knowledge of *176 the information sought to be elicited. If the trial court’s determination of these inquiries is in the affirmative, the court should then determine if prejudice to the defendant in selecting the jury reasonably could be inferred from the juror’s failure to respond. If prejudice reasonably could be inferred, then a new trial should be ordered.
¶ 14. Odom v. State, 855 So.2d 1381, 1383 (Miss.1978). Odom further held that the trial court’s judgment on whether the jury could be fair and impartial will not be disturbed unless clearly wrong. Id.
¶ 15. In the instant 'case, the trial court found that the jury panel was untainted because Juror Clayburn stated that she never discussed the case with other jurors, and because the court removed Clayburn from the panel. The court indicated that a mistrial may have been granted had Clay-burn’s misconduct been discovered after deliberations began. On appeal, Abies argues that it is not reasonable to believe that Clayburn refrained from talking to the other jurors about her personal knowledge, and that it could reasonably be inferred that prejudice attached, entitling Abies to a new trial.
¶ 16. Clayburn’s misconduct came to light prior to deliberations, at a time when the jurors had been instructed to refrain from discussing the case amongst themselves. Abies argues that, given the magnitude of Clayburn’s prior misconduct, the trial court could not have reasonably believed that Clayburn did not communicate her personal knowledge of the case to the other jurors. Certainly, Juror Clayburn’s concealment was particularly egregious and, had it been discovered after deliberations, would have warranted a new trial. Myers, 565 So.2d at 558. However, deliberations had not yet begun, and there was no showing that Clayburn ever discussed the case with other jurors. The trial court was not clearly wrong in finding that the jury could be fair and impartial notwithstanding Clayburn’s misconduct. See id.; Myles v. Entergy Mississippi, Inc., 828 So.2d 861, 866 (¶ 12) (Miss.Ct.App.2002) (a juror’s alleged concealment of material information was irrelevant because the juror was dismissed before deliberations).
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF YAZOO COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO YAZOO COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND GRIFFIS, JJ., CONCUR.