# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-IA-00999-SCT

*ROBERTS COMPANY, INC. f/k/a R & M FOODS, INC.*

*v.*

*MARCUS MOORE*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/08/2015 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| TRIAL COURT ATTORNEYS: | JAMES W. NOBLES, JR. |
| | DENNIS C. SWEET, III |
| | A. LA'VERNE EDNEY |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | A. LA'VERNE EDNEY |
| | FREDERICK N. SALVO, III |
| | ADAM H. GATES |
| | JESSICA Z. BARGER |
| | SHELLEY J. WHITE |
| ATTORNEYS FOR APPELLEE: | CRYSTAL WISE MARTIN |
| | JAMES W. NOBLES, JR. |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND RENDERED - 03/02/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1. In this slip-and-fall case, the jury returned a verdict in the defendant's favor, and the trial court entered judgment in accordance with that verdict. Plaintiff Marcus Moore filed a post-trial motion arguing, among other things, that one of the jurors was a convicted felon and therefore, statutorily disqualified. The trial judge agreed and granted Moore a new trial.

This Court granted the defendant's petition for an interlocutory appeal, and we reverse the trial court's order granting a new trial, we render judgment here reinstating the trial court's judment entered in accordance with the jury verdict.

**FACTS AND PROCEDURAL HISTORY**

¶2.     In 1989, Marcus Moore slipped and fell in a grocery store owned by the defendant, Roberts Company, Inc. ("RCI").  Moore was three years old at the time, and he allegedly struck his head when he fell.  After he reached the age of majority, Moore filed suit against RCI, claiming that RCI was negligent in allowing the floor to be slick.  Moore also alleged that the fall had caused "marked and significant traumatic and permanent injuries to his brain," leaving him with "permanent and profound deficits" in several areas.

¶3.     Following a ten-day trial, the jury found in RCI's favor.  Although all twelve jurors found that RCI had been negligent, nine jurors found that RCI's negligence was not a proximate cause of Moore's injuries.  The trial judge entered a final judgment on the jury's verdict, rendering judgment in favor of RCI and dismissing all of Moore's claims with prejudice.

¶4.     Following the jury's verdict but before entry of final judgment, Moore's mother (Mary) sent a letter to Moore's attorneys purportedly firing them.[1]  She then filed a pro se notice of appeal.  A few days later, Moore's attorneys filed the post-trial motion at issue in

---

[1]Between the time that Moore filed his complaint and trial began, his mother had been appointed conservator "of the Estate and of the person of Marcus Moore," after the chancellor found that "because of his [drug] addiction, Marcus Moore is unable to manage his own estate and take care of himself and it is necessary and in the best interest of Marcus Moore that a Conservator be appointed . . . ."

this appeal, asking for judgment notwithstanding the verdict or in the alternative, a new trial. Then, a month after the post-trial motion was filed, a Hinds County chancellor entered an order removing Mary as conservator "for failure to uphold the duties set forth in [the order appointing her]." The chancellor also prohibited Mary from filing anything on Moore's behalf, found that she was "not authorized" to file the notice of appeal nor to fire Moore's attorneys, and that Moore's attorneys were authorized to "fully prosecute" his interests in the case. The chancellor appointed chancery clerk Eddie Jean Carr as Moore's conservator going forward.[2]

¶5.    In Moore's post-trial motion, he argued that "Juror Foreperson John L. Turner [was] a convicted felon." Citing Mississippi Code Section 13-5-1 and *Fleming v. State*, 687 So. 2d 146 (Miss. 1997), Moore argued that Turner "clearly was not a qualified juror and as a result the verdict of the jury must be reversed." RCI countered that the trial court had lost jurisdiction to decide the post-trial motion once Mary filed her notice of appeal. RCI also argued that Section 13-5-1 says specifically that a juror's lack of qualification "shall not . . . vitiate an indictment or verdict."

¶6.    After a hearing, the trial judge found that

> The plaintiff filed the herein motion for Judgment Notwithstanding the Verdict setting forth a number of grounds supporting his motion. The Court, after reviewing this matter, finds that the issue with respect to Juror Foreperson

---

[2] RCI presents an argument on appeal about the timing of the notice of appeal and the post-trial motion. But, although it argued various issues in the trial court regarding the validity of Mary's removal as conservator and her purported firing of Moore's counsel, it does not appear to raise any further argument about those specific issues on appeal. Also, the appeal filed by Mary since has been dismissed voluntarily.

John L. Turner has merit.  The issue before the court is whether Juror Turner's failure to reveal he was a convicted felon disqualified him as a juror.

. . .

The Mississippi Supreme Court reversed and remanded a criminal conviction in *Fleming v. State*, 687 So. 2d 146 (Miss. 1997) [,] on the grounds that one of the jurors failed to reveal that he was a convicted felon. Moreover, Mississippi Code Annotated Section 13-5-l, in relevant part, states in order to be a competent juror, the person must not have been convicted of an infamous crime.

. . .

John Turner was not merely a juror in this matter. He was the Jury Foreperson. Obviously, the jury foreperson has a great responsibility in presiding over deliberations and making sure the verdict tendered to the court is in the proper form. No one knows what took place in the jury room other than the jurors. As noted in *Fleming*, prejudice is presumed. The plaintiff had no opportunity to challenge Juror Turner's convicted felon status. Therefore, the court finds there is indeed prejudice to the plaintiff. Accordingly, the parties shall be given another opportunity to relitigate the herein controversy.

The trial judge noted that RCI had "no role" in the prejudice and that it was a "mere bystander."  And the judge also noted that if the verdict had been for Moore, he also would have ordered a new trial.  Finding no merit to Moore's other arguments, the trial judge denied his motion for judgment notwithstanding the verdict but granted his motion for new trial.

¶7.    Roberts filed a petition for interlocutory appeal, which this Court granted.  Roberts now presents three issues, which we restate for clarity:

1.  Is the trial judge's order granting a new trial void for lack of jurisdiction because an appeal from the final judgment was pending in this Court when it was entered?

2.  Did the trial court effectively read the mandatory language out of Section 13-5-1 and ignore the Legislature's intent to preserve jury verdicts by presuming prejudice in this case, without any evidence that a juror's felony conviction actually affected the fairness of the trial?

3.  Is the application of such a presumption of prejudice fair in civil cases that, unlike criminal cases, do not require unanimous juries?

4

¶8.     This Court applies an abuse-of-discretion standard when reviewing a trial judge's grant of a motion for new trial. ***Ballard Realty Co., Inc. v. Ohazurike***, 97 So. 3d 52, 58 (Miss. 2012). But questions of statutory interpretation are questions of law which this Court reviews de novo. ***Page v. Univ. of S. Miss.***, 878 So. 2d 1003, 1004-05 (Miss. 2004).

**1.      The trial court had jurisdiction to rule on Moore's post-trial motion.**

¶9.     RCI argues first that "[a]t the time it granted [Moore's] new trial motion, the trial court no longer had jurisdiction over the case because an appeal already was pending." We disagree.

¶10.    Mississippi Rule of Appellate Procedure 4(d) states, in pertinent part:

> A notice of appeal filed after announcement or entry of the judgment but before disposition of any of the above motions [including a Rule 59 motion for new trial] *is ineffective to appeal from the judgment* or order, or part thereof, specified in the notice of appeal, *until the entry of the order disposing of the last such motion outstanding*.

Miss. R. App. P. 4(d) (emphasis added). RCI acknowledges Rule 4(d), stating that "[o]f course, if [Moore's] notice of appeal had been filed before the trial court disposed of pending post-trial motions, the notice of appeal would not have ripened into an effective appeal until the post-trial motions were decided."

¶11.    But RCI does not acknowledge the comments to Rule 4(d), which extend the rule to the situation presented in Moore's case:

> Rules 4(d) and 4(e) now provide that a notice of appeal filed before the disposition of a specified post trial motion will become effective upon disposition of the motion. *A notice filed before the filing of one of the specified motions* or after the filing of a motion but before its disposition is, in effect,

suspended until the motion's disposition, whereupon the previously filed notice effectively places jurisdiction in the Supreme Court.

Miss. R. App. P. 4(d) cmt. (emphasis added). The advisory committee notes explain that Rules 4(d) and 4(e) and the related comments were amended in 1998 to "provide that a notice of appeal filed before disposition of specified post trial motions becomes effective on disposition thereof . . . ." The plain language of Rule 4(d) and the comments establish that Mary's notice of appeal was "suspended" until the trial judge ruled on Moore's post-trial motion, regardless of whether the motion actually was pending at the time she filed. As such, the trial judge did not lose jurisdiction to rule on it.

¶12. Tellingly, all of the cases cited by RCI to support its assertion that the trial court lost jurisdiction were decided before 1998. And the one post-1998 case RCI cites is easily distinguishable. In *McNeil v. Hester*, 753 So. 2d 1057 (Miss. 2000), this Court held only that the chancery court was without jurisdiction to close an estate and discharge the executors once a notice of appeal had been filed. *Id.* at 1075-76. There was no discussion of Rule 59 motions whatsoever, and *McNeil* simply cannot be read to support RCI's position that the trial court here was without jurisdiction to rule on Moore's Rule 59 motion, especially in light of Rule 4's clear language. We find this issue to be without merit.

### 2. The trial judge erred in his interpretation of Section 13-5-1 and caselaw.

¶13. RCI argues next that "the new trial order is inconsistent with legislative intent to preserve jury verdicts." Specifically, RCI argues that

> the order requiring a second trial in this case achieves the result expressly instructed against in Mississippi Code Annotated Section 13-5-1, the statute setting forth the criteria to serve as a juror. That statute states plainly and

6

unambiguously that the lack of qualification "on the part of one or more jurors shall *not* . . . vitiate an indictment or verdict." The trial court improperly ignored this language and rendered an entire sentence in the statute a nullity when it concluded . . . that the jury's verdict must be set aside[.]

(Emphasis in original.) We agree.

¶14. Mississippi Code Section 13-5-1 establishes the qualifications for jurors and states, in pertinent part:

> Every citizen not under the age of twenty-one years, who is either a qualified elector, or a resident freeholder of the county for more than one year, is able to read and write, and has not been convicted of an infamous crime,[3] or the unlawful sale of intoxicating liquors within a period of five years and who is not a common gambler or habitual drunkard, is a competent juror. No person who is or has been within twelve months the overseer of a public road or road contractor shall, however, be competent to serve as a grand juror. *The lack of any such qualifications on the part of one or more jurors shall not, however, vitiate an indictment or verdict.* Moreover, no talesman or tales juror shall be qualified who has served as such talesman or tales juror in the last preceding two years, and no juror shall serve on any jury who has served as such for the last preceding two years. No juror shall serve who has a case of his own pending in that court, provided there are sufficient qualified jurors in the district, and for trial at that term.

Miss. Code Ann. § 13-5-1 (Rev. 2012) (emphasis added). Although the trial judge referenced Section 13-5-1 in his order granting a new trial, he did not discuss the "vitiate" language at all. Rather, he relied on this Court's opinion in *Fleming v. State*, 687 So. 2d 146 (Miss. 1997), where this Court reversed and remanded a criminal conviction after the parties discovered that one of the jurors was a convicted felon, presuming prejudice. *Id.* at 147.

---

[3] The parties argued extensively below about the nature of Turner's actual crime and his conviction. For purposes of this appeal, though, RCI conceded that Turner was not a qualified juror.

7

While *Fleming*, at first blush, might appear to be inconsistent with our holding today, it is not.

¶15.    In *Fleming*, a juror failed to disclose his felony conviction when asked in voir dire. *Id*. at 147–48. This Court reversed, not because the juror was not qualified under Section 13-5-1, but rather because the Court found the defendant had been denied a constitutional right to a fair and impartial jury. Nothing in *Fleming* suggests that every violation of Section 13-5-1 will rise to the level of a constitutional violation.

¶16.    Here, Moore persuaded the trial judge he was entitled to a new trial because a juror was not qualified to serve under Section 13-5-1. Because he made no claim and presented no proof of a constitutional violation, the circuit judge's reliance on *Fleming* was error.

¶17.    As for cases that discuss statutorily disqualified jurors along with Section 13-5-1, we note two. First, in *Brown v. State*, 529 So. 2d 537 (Miss. 1988), this Court addressed a situation in which a juror had a case pending in the same court in which she was serving (which Section 13-5-1 prohibits). *Id.* at 538-39. This Court briefly noted Section 13-5-1's "vitiate" language in its discussion, with the entirety of that analysis as follows:

> We note that after the initial definition of who is competent to serve the statute provides that the lack of such qualifications will not vitiate a verdict. The statute then goes on to unequivocally prohibit service of any juror who has a case pending in that court.

*Id.* at 540. So, while the *Brown* Court did hold that the motion for a new trial should have been granted, we find that *Brown*'s holding is not applicable here, because the facts are distinguishable. In *Brown*, the disqualification at issue was that the juror had a case pending in the same court. As a matter of fact, the juror's case was scheduled for the following

8

Monday following Brown's trial. *Id*. at 538. That disqualification comes *after* the "vitiate" language in the statute. But here, the "crime" disqualification language comes *before* the "vitiate" language in the statute. Thus, *Brown* does not mandate, or even support, the trial judge's ruling here.

¶18. Second, in *Wright v. State*, 805 So. 2d 577 (Miss. Ct. App. 2001), the Court of Appeals addressed "[w]hether the trial court erred in failing to grant a new trial when it was discovered by the judge, post-trial, that a juror was living in Memphis, Tennessee at the time he was selected to serve on the jury[.]" *Id.* at 579. After noting this Court's decision in *Brown*, the Court of Appeals reasoned that

> On the other hand, in cases such as Wright's, where some other qualification [besides having a case pending in the same court] is in question, the statute itself provides that "[t]he lack of any such qualifications on the part of one or more jurors shall not, however, vitiate an indictment or verdict."

*Id.* at 580. Thus, the Court of Appeals concluded that a new trial was not warranted. *Id.*

¶19. In sum, the statute that establishes jury qualifications says unequivocally that the "lack of any such qualifications on the part of one or more jurors shall not, however, vitiate an indictment or verdict." Miss. Code Ann. § 13-5-1 (Rev. 2012). The statute controls the outcome here. While the *Fleming* Court did mandate a new trial where a juror was a convicted felon, it addressed the defendant's constitutional right to a fair and impartial jury under the facts of that case. It did not analyze section 13-5-1's "vitiate" language and relied on precedent that was irrelevant to the issue at hand. To the extent that *Fleming* stands for the proposition that a violation of the first section of Section 13-5-1 requires an automatic reversal or invokes a presumption of prejudice, it is hereby overruled. Further, the *Brown*

Court reached its result after engaging in statutory analysis that is inapplicable here. As such, this Court reverses the trial judge and reinstates the jury verdict.

### 3. RCI's "Prejudice" Arguments

¶20.    Because we find the second issue dispositive, we do not discuss the remainder of RCI's arguments.

**CONCLUSION**

¶21.    While Juror Turner was statutorily disqualified to serve as a juror under Section 13-5-1, his lack of qualification "shall not" vitiate the verdict rendered here. We therefore reverse the trial court's order granting a new trial, and we render judgment here reinstating the trial court's judgment entered in accordance with the jury verdict.

¶22.    **REVERSED AND RENDERED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, KING, COLEMAN, MAXWELL AND BEAM, JJ., CONCUR.**